**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **EFK INVESTMENTS, LLC, MARKET STREET PROPERTY MANAGEMENT, INC.,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**PEERLESS INSURANCE COMPANY,** *et al.***,**<br><br>    **Defendants.** | Case No.: 13-CV-5910 YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

Plaintiffs EFK Investments, LLC, and Market Street Property Management, Inc. ("EFK" and "Market Street," or, collectively, "Plaintiffs") bring this insurance coverage action against Defendant Peerless Insurance Company ("Peerless"). Plaintiffs allege claims for breach of an insurance agreement, breach of the covenant of good faith and fair dealing/insurance bad faith, misrepresentation and violation of California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200. Peerless has filed a Motion to Dismiss all claims on the grounds that the terms of Plaintiffs' insurance policy excluded coverage for the occurrences at issue. (Dkt. No. 16.)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **ORDERS** that the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Plaintiffs third claim for relief based upon misrepresentation because Plaintiffs have failed to allege facts sufficient to state this claim. As to the claim for breach of contract, as well as the insurance bad faith and UCL claims arising

from the same allegations, the motion is **DENIED**. Factual issues concerning whether Peerless had a duty to defend or indemnify Plaintiffs preclude resolution of the claims on a motion to dismiss.[1]

**I.   BACKGROUND**

The facts as set forth herein are taken from Plaintiffs' complaint and are assumed to be true for purposes of the motion to dismiss. *See Diaz v. International Longshoremen's and Warehousemen's Union*, 474 F.3d 1202, 1205 (9th Cir. 2007). Plaintiffs' complaint alleges that EFK Investments is the owner, and Market Street Property is the property manager, of two adjacent pieces of commercial property in San Francisco. (*See* Notice of Removal, Dkt. No. 1, Exh. A.) Elite Audio was a tenant operating a café and home theater electronics store at one of the properties. Plaintiffs allege they had insurance on the properties under a policy underwritten by Peerless.

Plaintiffs undertook some sandblasting in preparation for painting in the commercial property adjacent to the one leased by Elite Audio. The sandblasting resulted in dust and debris intruding into Elite Audio's space. Elite contended the dust and debris destroyed its entire inventory of high-end audio equipment, as well as damaging furnishings and disrupting business. Although testing prior to the sandblasting revealed no lead in the paint to be sandblasted, Plaintiffs arranged for testing of the intruding dust after the incident. The testing showed trace amounts of lead in a small proportion of the areas that were tested. Plaintiffs arranged for professional abatement of the dust and debris.

Plaintiffs notified Peerless about the incident and Elite Audio's damages claim. Initially, Peerless denied that Plaintiffs had any liability and refused to contribute more than a nuisance amount toward any settlement. Then, on June 12, 2012, Elite filed suit in San Francisco Superior Court against EFK and Market Street, alleging a variety of tort and contract claims, misrepresentation, and an unfair competition claim. (Plaintiffs' complaint, Exh. 1 ["Elite Complaint"].) EFK and Market Street promptly tendered their defense to Golden Eagle and

---

[1] Plaintiffs also named as a defendant Golden Eagle Insurance Corporation. Because Plaintiffs agreed to dismiss Golden Eagle Insurance Corporation, the motion to dismiss as to Golden Eagle Insurance Corporation is **DENIED AS MOOT**. (*See* Dkt. No. 40, Order Granting Stipulation for Dismissal of Defendant Golden Eagle Insurance Corporation.)

Peerless. The response from Golden Eagle and Peerless was to deny coverage and refuse to defend EFK and Market Street against the Elite Complaint. Their position was that Plaintiffs had failed to implement sufficient precautions in connection with the sandblasting and the claims concerned dust and debris that were lead-contaminated, such that the policy's pollution and lead exclusions applied.

Plaintiffs resolved the litigation on their own in a settlement with Elite requiring: payment of a $130,000.00 lump sum; a lease modification which resulted in a net loss to Plaintiffs of $16,200.00; clean-up costs of $73,048.00; and attorneys' fees and costs of approximately $35,000.00. Plaintiffs again demanded that Peerless compensate them for their losses in connection with the Elite litigation since the alleged cause of the injuries to Elite Audio was ordinary negligence for which the policy provided coverage. Peerless continued to assert that the claims were based upon an occurrence that was excluded from coverage under the terms of the policy.

On November 1, 2013, Plaintiffs filed the instant action in San Francisco Superior Court against Peerless, and Peerless filed a notice of removal to this Court based upon diversity jurisdiction on December 20, 2013.

## II.   REQUESTS FOR JUDICIAL NOTICE

As a preliminary matter, both Peerless and Plaintiffs have requested that the Court take judicial notice of certain documents. Defendants seek judicial notice of the policies referenced in Plaintiffs' complaint, as well as copies of Plaintiffs' complaint and the exhibits thereto.

Plaintiffs ask the Court to take judicial notice of: (1) communications between them and Peerless concerning the Elite litigation and the facts of the claim; (2) a copy of a lead assessment report by LaCroix Davis LLC, obtained after the sandblasting.[2] Peerless objected to this request for judicial notice as being matters not part of the court record. (*See* Reply at p. 3, fn. 3.)

As a general rule on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may not consider matters outside the complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th

---

[2] Plaintiffs contend that the documents, particularly the hygienist's report concerning lead contamination, show that there were only trace amounts of lead in isolated pockets of the property, and lead contamination was not solely or even significantly the cause of Elite's claimed damage.

3

Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).  There are two exceptions to the general rule: (1) documents referenced in the complaint or "central" to the claims as to which no party questions the authenticity of the copies provided (*see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Branch,* 14 F.3d at 454); and (2) matters of public record covered by Federal Rule of Evidence 201 (*see Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Assoc. v. Solimino,* 501 U.S. 104 (1991)).  Any ambiguity in the documents must be resolved in favor of Plaintiffs at this stage in the proceedings.  *See International Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2nd Cir. 1995); *Hearn v. R.J. Reynolds Tobacco Co.* 279 F.Supp.2d 1096, 1102 (Dist. Ariz. 2003).

The Request for Judicial Notice by Peerless is **GRANTED**.  The policy is specifically referenced in Plaintiffs' complaint and there is no dispute as to its authenticity.

Plaintiffs' Request for Judicial Notice is **DENIED**.  The Court finds that it would be inappropriate to take judicial notice of the evidence Plaintiffs offer in opposition in the context of a motion to dismiss.  While the evidence, and the parties' differing views of its significance, are germane to question of whether Peerless had a duty to defend, they are not properly considered in determining the adequacy of the pleadings.

### III. ANALYSIS

The principal basis for dismissal asserted by Peerless is that the face of the complaint and matters of which the Court properly may take judicial notice establish there was no potential for coverage under the applicable insurance policy, and therefore no duty to defend or indemnify the claims against Plaintiffs in the Elite litigation.

California substantive law on insurance applies to diversity case.  *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001).  Whether an insurer has a duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy.  "If any facts stated or fairly inferable in the complaint [against the insured], or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential

4

coverage." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 654-655 (2005). "On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 654-655 (2005). To avoid the duty to defend, the insurer must show that "the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*" *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal.4th 287, 300 (1993) (emphasis in original). Doubts as to whether particular facts give rise to a duty to defend are resolved in an insured's favor. *See Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 269 (1966); *CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 606 (1986). In litigation involving both covered and non-covered claims, "the insurer has a duty to defend the action in its entirety." *Buss v. Superior Court*, 16 Cal.4th 35, 48 (1997).

Under California law, interpretation of an insurance policy is a question of law to be decided by a court. *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 18 (1995). An exclusion precludes coverage only if it is "conspicuous, plain and clear." *MacKinnon*, 31 Cal. 4th at 648 (quoting *State Farm Mut. Auto. Ins. Co. v. Jacober,* 10 Cal.3d 193, 201–202 (1973)). As a general rule, insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th at 648 (internal citations and quotations omitted).

The policy at issue here contains a "Total Pollution Exclusion" by endorsement which provides, in relevant part:

> This insurance does not apply to:
> f. Pollution
> > (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
> > \* \* \*
> > (2) Any loss, cost or expense arising out of any:
> > (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"

5

(Peerless RJN, Exh. A and Exh. C at POL 0244.)  The Policy defines "Pollutants" to "mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed." (*Id.* at POL 0267.)  The Policy's Lead Exclusion states, in pertinent part:

> This insurance does not apply to:
>
> 1. "Bodily injury", "property damage" or "personal and advertising injury" arising, in whole or in part, either directly or indirectly out of the mining, processing, manufacture, storage, distribution, sale, installation, removal, disposal, handling, inhalation, ingestion, absorption, use or existence of, exposure to, or contact with lead or lead contained in goods, products or materials; or
>
> 2. Any loss, cost or expense arising out of any:
>     a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead or lead contained in goods, products or materials; or
>     b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead or lead contained in goods, products or materials.

(Peerless RJN, Exh. A and Exh. C, at POL 0220.)

Peerless argues that the issue of its duty to defend Plaintiffs against the Elite claim can be decided as a matter of law based solely on the face of the complaint because the policy exclusions conclusively establish a lack of coverage.  Peerless argues that dust and lead qualify as "pollutants" within the meaning of the policy, such that Plaintiffs' claims unquestionably are encompassed by the pollution and lead exclusions in the policy.  As a consequence, Peerless contends, the Elite litigation did not have any "potential for coverage," and Peerless had no duty to defend.

Plaintiffs, for their part, contend that alleged harm arose from an isolated act of alleged negligence—Plaintiffs' improper sealing of the property for sandblasting—which resulted in the dispersal of substances that damaged Elite.  Plaintiffs assert that potential coverage and a duty of defense arose regardless of whether the substances released were "pollutants" under the policy,

since they were released as a result of the negligence, not "conventional environmental pollution" under applicable California law.

### A.     Duty to Defend

The existence of a duty to defend depends upon both the facts alleged in the Elite litigation and the extrinsic evidence known to Peerless at the time.  Extrinsic facts can create a duty of defense.  *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 276 (1966).  An insurer cannot limit its coverage decision to the facts as pleaded.  "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage."  *Scottsdale Insurance Co. v. MV Transportation*, 36 Cal.4th 643, 655 (2005).

The Elite Complaint alleged Plaintiffs were aware the property contained traces of lead and there would be significant amounts of dust generated by the sandblasting.  (Elite Complaint ¶¶ 2, 20, 22, 23, and 25.)  The Elite Complaint alleged that Plaintiffs promised and guaranteed that they would undertake diligent and professional measures to ensure that the sandblasting would not cause any pollution or contamination of Elite's business.  (Elite Complaint ¶ 2.)  It also alleged that the sandblasting contaminated the café and store with lead-impregnated dust and sand.  (Elite Complaint ¶ 1.)  According to the allegations in the Elite Complaint, the original plan was to hire a company to "shrinkwrap" Elite Audio's furnishings and inventory, but then was changed to a plan to use "visqueen" to seal the premises to prevent any sand or dust intrusion.  (Elite Complaint ¶¶ 23-25.)  However, a person without adequate expertise or training applied the visqueen and the sandblasting was conducted without further precautions to prevent lead, sand, or dust intrusion into Elite's space, which occurred.  (Elite Complaint ¶¶ 30-32.)

### B.     Scope of the Total Pollution Exclusion

The California Supreme Court in *MacKinnon* interpreted a pollution exclusion provision that is essentially identical to the one at issue here.  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635 (2003).  In *MacKinnon,* an apartment building landlord used a pesticide -- acknowledged to be a toxic chemical -- in a normal, but negligent manner.  The landlord failed to notify a tenant that the

1 pest company would be fumigating the building, and failed to evacuate the tenant, leading to her
2 death. The landlord's insurer asserted that the occurrence was one excluded from coverage under
3 the policy's pollution exclusion, and the trial court agreed, granting summary judgment in favor of
4 the insurer. The California Supreme Court reversed, holding that the pollution exclusion did not
5 apply under the circumstances. *Id.* at 652-53, 656.

6 "[I]n order to ascertain the scope of an exclusion, [a court] must first consider the coverage
7 language of the policy." *MacKinnon*, 31 Cal. 4th at 649. The broad language of a standard
8 commercial general liability (CGL) policy "establishes a reasonable expectation that the insured
9 will have coverage for ordinary acts of negligence resulting in bodily injury." *Id.* "[I]n order for an
10 exclusionary clause to effectively exclude coverage, it 'must be conspicuous, plain and clear', …
11 the pollution exclusion in question does not plainly and clearly exclude ordinary acts of negligence
12 involving toxic chemicals such as pesticides." *Id.* at 639.

13 An interpretation of the pollution exclusion based entirely on the nature of the irritant rather
14 than the circumstances of the occurrence "leads to absurd results and ignores the familiar
15 connotations of the words used in the exclusion." *Id.* at 652. In interpreting the meaning of the
16 exclusion, the court must refuse to "'make a fortress out of the dictionary,' [and instead] must
17 attempt to put itself in the position of a layperson and understand how he or she might reasonably
18 interpret the exclusionary language." *MacKinnon,* 31 Cal. 4th at 649 (internal citations and
19 quotations omitted).

20 As the *MacKinnon* court noted, the standard pollution exclusion in insurance policies was
21 originally an effort by the insurance industry to avoid claims based on environmental laws such as
22 groundwater contamination and release of airborne pollutants into the atmosphere. *MacKinnon,* 31
23 Cal. 4th at 643-44. The pollution exclusion was not meant to deny coverage for ordinary acts of
24 negligence. *Id.* at 643. Giving the pollution exclusion an overly broad interpretation would be
25 unreasonable since "[v]irtually any substance can act under the proper circumstances as an 'irritant
26 or contaminant.'" *Id.* at 650. "Without some limiting principle, the pollution exclusion clause
27 would extend far beyond its intended scope, and lead to some absurd results." *Id.* at 650 (quoting
28 *Pipefitters, supra,* 976 F.2d at page 1043).

1  In California "[c]overage will therefore be found unless the pollution exclusion
2  conspicuously, plainly and clearly apprises the insured that certain acts of ordinary negligence, such
3  as the spraying of pesticides in this case, will not be covered." *MacKinnon,* 31 Cal.4th at 649.  The
4  pollution exclusion clause should be read as limited to "injuries arising from events commonly
5  thought of as pollution, *i.e.* environmental pollution." *Id.* at 653.  To the extent the pollution
6  exclusion does not "plainly and clearly" exclude the alleged negligent conduct, and thus "does not
7  plainly and clearly take away what the CGL coverage provision patently confers[,]…the exclusion
8  must be interpreted in favor of coverage." *Id.* at 655-56.[3]

9  In determining whether an injury arises from events commonly regarded as "environmental
10 pollution," post-*MacKinnon* cases have looked to evidence such as: whether the insured knew of
11 the presence of the pollutant; how widespread was the dissemination of the pollutant; whether the
12 pollutant is one that is regulated by state and federal environmental laws; whether handling of the
13 alleged pollutant is regulated or controlled; and, relatedly, whether the nature of the pollutant is
14 such that a reasonable insured would understand that any release would be harmful.  *See Villa Los*
15 *Alamos Homeowners Assn. v. State Farm Gen. Ins. Co.*, 198 Cal. App. 4th 522, 536-540 (2011)
16 (discussing cases).[4]

### C.  *Application to Plaintiffs' Complaint*

18 Under the applicable authorities, the Court finds it cannot determine that Peerless had no
19 duty to defend as a matter of law from the face of Plaintiffs' complaint and the matters judicially

---

[3] The *MacKinnon* court considered and rejected a proposal that the pollution exclusion be interpreted to apply to all injuries arising from "substances 'widely…understood to be dangerous,'" mentioning lead dust as one substance that had been so identified in a sister state's decision. *MacKinnon,* 31 Cal.4th at 655.  The California Supreme Court rejected such an interpretation as one with "no basis in the language of the clause," in contrast to the court's "commonly thought of as pollution" formulation, which was "firmly rooted in the policy's language." *Id.*

[4] Peerless suggests that *Garamendi v Golden Eagle Ins. Co.,* 127 Cal.App.4th 480 (2005) is dispositive here.  However, that case concerned "*silica* dust," the "widespread dissemination" of which the court held was "most assuredly…what is 'commonly thought of as pollution' and 'environmental pollution.'" *Id.*  The Court does not agree that the mere allegations of "*dust*" (or even "lead-impregnated dust"), without more, are sufficient to find that the damage in the underlying Elite litigation was a result of "environmental pollution."

9

1 noticeable. Both *MacKinnon* and *Villa Los Alamos* were appeals of summary judgment motions,
2 and thus in a very different procedural posture than the instant motion to dismiss. The *Villa Los*
3 *Alamos* case, on which Peerless relies so heavily, extensively cited applicable regulations,
4 certification requirements, and other evidence to support its determination. Based on that evidence,
5 the court found that the incident at issue involved a release of a pollutant for which there is no safe
6 level of exposure into the air over the course of several days, resulting in a level of the pollutant
7 sufficient to contaminate the building complex and adjacent outside areas. *Villa Los Alamos*, 198
8 Cal. App. 4th at 541. Under those facts, the incident constituted environmental pollution. *Id.*

9 Here, in the context of a motion to dismiss, Peerless has not offered similar evidence, nor
10 has it otherwise established that the underlying complaint and the extrinsic evidence showed that no
11 potential for coverage existed. Peerless argued, in reply and at the hearing on the motion, that the
12 complaint and the matters properly subject to judicial notice show lead contamination was
13 "sufficiently pervasive" to require cleaning by a licensed environmental remediation contractor,
14 and that paint removal is heavily regulated in California. However, nothing in Plaintiffs'
15 complaint, the Elite Complaint, or the matters of which the Court may properly take judicial notice
16 supports these arguments. (*Cf.* Plaintiff's complaint at ¶ 9, Elite Complaint at ¶ 32.) Such extrinsic
17 evidence is best raised in the context of summary judgment.

18 Similarly, the Court cannot determine from the pleadings alone that Peerless had no duty to
19 defend on account of the applicability of the policy's Lead Exclusion. While Plaintiffs concede
20 that the Lead Exclusion applies to property damage "arising in whole or in part, either directly or
21 indirectly out of the . . . existence of, exposure to, or contact with lead or lead contained in goods,
22 products or materials," they allege that lead was not found in the majority of the areas where dust
23 and debris intruded on Elite's inventory and furnishings. (Plaintiffs' complaint ¶ 9.) Thus, it is not
24 plain from the face of the complaint what portion of the damages in the underlying Elite litigation
25 were caused, in whole or in part, by lead dust. Again, under California law, an insurance policy's
26 coverage provisions are interpreted broadly, while its exclusions are interpreted narrowly and
27 against the insurer. *MacKinnon*, 31 Cal. 4th at 648. Thus, the Court does not read the Lead
28 Exclusion as precluding coverage for *all* damage arising from an occurrence, no matter what

10

1 proportion was caused "in whole or in part" by lead in the absence of some evidence of the parties'
2 intentions that would so limit it. Again, this appears to be an issue that is more properly developed
3 in summary judgment briefing.

4 As a consequence, the motion to dismiss the breach of contract claim is **DENIED**. The
5 insurance bad faith and UCL claims rise and fall on the sufficiency of the breach of contract
6 pleading, and the motion to dismiss them is **DENIED** as well.

### D. Misrepresentation Claim

Peerless argues that the misrepresentation claim should be dismissed for the additional reason that Plaintiffs have alleged no "misrepresentation" other than the policy language and a subsequent denial of coverage, which does not establish a claim for misrepresentation. Plaintiffs oppose, contending that the complaint alleges not only false representations in the policy but also in a May 14, 2012 letter from Peerless to Elite, which stated that Peerless would "pay for damages for which [Plaintiffs] become[] legally liable." (Plaintiffs' complaint ¶¶ 12, 33.) However, as Plaintiffs allege, that same letter to Elite (as opposed to Plaintiffs) went on to say that "[w]e believe our insured is not legally liable for this loss." (Plaintiffs' complaint ¶12.)

The elements of a claim for fraud or misrepresentation under California law are: "(1) "misrepresentation," which includes either a "false representation, concealment or nondisclosure"; (2) "knowledge of falsity," also referred to as "scienter"; (3) "intent to defraud," which includes an intent "to induce reliance"; (4) "justifiable reliance"; and (5) damages." *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 419 (C.D. Cal. 2012) (citing *Lazar v. Superior Court,* 12 Cal.4th 631, 637 (1996) and *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1105 (9th Cir.2003)). Insurance law is well-developed in California. "[A]llegations of 'nonperformance' alone are not enough to prove the defendant's intent to not perform." *Petersen*, 281 F.R.D. at 420.

Here, the allegations here do not lay out the basis for the claim sufficiently. The parties did not brief this issue in any significant manner, but suffice it to note: (i) a heightened pleading standard applies to claims sounding in fraud under Rule 9 of the Federal Rules of Civil Procedure; and (ii) a claim for fraudulent misrepresentation is distinct and separate from those subsumed within the other claims already alleged. Thus, the Court **GRANTS** the motion to dismiss the third

claim for misrepresentation with leave to amend to allow Plaintiffs to allege the elements and basis for their claim with more particularity.

### III. CONCLUSION

Accordingly, the Motion to Dismiss is **GRANTED IN PART WITH LEAVE TO AMEND** as to the third claim for misrepresentation, and is otherwise **DENIED**.

Plaintiffs shall file an amended complaint consistent with this ruling, or a notice that they do not intend to amend the claim, no later than **October 10, 2014**. Peerless shall file its response within **14 days** thereafter.

The case management conference currently set for October 6, 2014, is **CONTINUED** to **November 17, 2014**. The parties shall file an updated joint case management statement by **November 10, 2014**.

This Order terminates Dkt. No. 16.

**IT IS SO ORDERED**.

Date: September 26, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**